```
 1                UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF NEW YORK
 2
   IN RE:                      .   Case No. 10-14731-scc
 3                             .   Chapter 11
   2626 BROADWAY, LLC,         .
 4                             .
                    Debtor.    .
 5                             .
   . . . . . . . . . . . . . . .
 6                             .
   2626 BROADWAY, LLC,         .   Case No. 10-04086-scc
 7                             .   ADVERSARY PROCEEDING
                  Plaintiff,   .
 8                             .
      vs.                      .
 9                             .   One Bowling Green
   BROADWAY METRO ASSOCIATES,  .   New York, New York  10004
10 L.P., et al.,               .
                               .
11                 Defendants. .   Wednesday, December 15, 2010
                               .   10:32 a.m.
12 . . . . . . . . . . . . . . .

13      TRANSCRIPT OF STATUS CONFERENCE AND MOTION TO REMAND (IN
   ADVERSARY PROCEEDING) BEFORE THE HONORABLE SHELLEY C. CHAPMAN
14                 UNITED STATES BANKRUPTCY JUDGE

15 APPEARANCES:

16 For Broadway Metro           M. Teresa Daley Law Offices, PC
   Associates, L.P.             By M. Teresa Daley, Esq.
17                              By Andrea J. Lawrence, Esq.
                                520 8th Avenue, 24th Floor
18                              New York, New York  10018
                                (212) 560-3943
19
   For the Debtor, 2626         Robinson Brog Leinwand Green
20 Broadway, LLC                  Genovese & Gluck, P.C.
                                By Robert M. Sasloff, Esq.
21                              875 Third Avenue
                                New York, New York  10022
22                              (212) 586-4050

23 For Reavis Parent Lehrer,    Maria M. Patterson, Esq.
   counsel to Albert Bialek,    360 Riverside Drive, #12-C
24 and others                   New York, New York  10025
                                (212) 316-0205
25
```



```
 1  Audio Operator:              Michelle Brown

 2  Transcription Service:       Esquire
                                 One Penn Plaza, Suite 4715
 3                               New York, New York  10119
                                 (212) 687-8010
 4
    Transcription Service:       Esquire
 5                               One Penn Plaza
                                 Suite 4715
 6                               New York, N.Y. 10119
                                 (212) 687-8010
 7
    Proceedings recorded by electronic sound recording;
 8  transcript produced by transcription service.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



1               (Time Noted:  10:33 a.m.)

2               THE COURT:  Good morning.

3               MR. SASLOFF:  Good morning, Your Honor.  Robert

4  Sasloff from the firm of Robinson Brog, we're counsel to the

5  Debtor.

6               MS. PATTERSON:  Maria Patterson, Special Counsel

7  to Reavis Parent & Lehrer, counsel for Metro Associates.

8               THE COURT:  Give me your name again?  I'm sorry.

9               MS. PATTERSON:  Maria Patterson.

10              THE COURT:  Okay.

11              MS. PATTERSON:  Special Counsel for Reavis Parent

12  Lehrer, counsel to Albert Bialek and non-member associates.

13              THE COURT:  Okay.

14              MS. DALEY:  M. Teresa Daley, M. Teresa Daley Law

15  Offices, P.C., counsel for Broadway Metro.  Good morning.

16              THE COURT:  Good morning.

17              MS. LAWRENCE:  Andrea Lawrence, M. Teresa Daley

18  Law Offices, as well, on behalf of Broadway Metro.

19              THE COURT:  Good morning.  Is your partner here?

20  I thought I saw him.

21              MR. SASLOFF:  He was here on another matter, Your

22  Honor.

23              THE COURT:  Okay.

24              MR. SASLOFF:  So, I'm here today alone.

25              THE COURT:  All right.  Today seems to be a day



1  devoted to property.

2         MR. SASLOFF:  That's true, Your Honor.  In this

3  case, there are three matters on today's calendar.

4         THE COURT:  Yes.

5         MR. SASLOFF:  One was the status conference --

6         THE COURT:  Right.

7         MR. SASLOFF:  -- one was a pre-trial conference,

8  and an action that we removed, and the other is counsel's

9  motion to remand --

10        THE COURT:  Motion to remand.

11        MR. SASLOFF:  -- that action back to the State

12  Court.  I don't know how you want to handle the calendar.  If

13  you want, we could do the remand --

14        THE COURT:  Well, why don't you tell me the

15  status, and then I'll tell you what I'm thinking.

16        MR. SASLOFF:  As Your Honor recalls, this was a

17  Debtor that leased property and was supposed to renovate that

18  property and turn it into something different.

19        THE COURT:  Right.

20        MR. SASLOFF:  There have been motions before you

21  with regard to the landlord's motions for relief from stay

22  and alternative relief.  Last time we were here, Your Honor,

23  after some time there was an order entered by this Court

24  granting the landlord relief from the automatic stay so they

25  could go back to State Court to seek the issuance of the



1  warrant of eviction, I believe, in this case.

2        THE COURT:  Right, so what's the status of that?

3  Maybe Ms. Daley is a better person to ask that.  So, you can

4  finish your presentation.

5        MR. SASLOFF:  I was told they have applied for it,

6  but they have not gotten it as of yet.

7        THE COURT:  Okay.

8        MR. SASLOFF:  That being said, the Debtor in

9  accordance with that order has stopped marketing the

10 property, has taken down his signs and essentially what is

11 left over would be the Debtor's claims against third parties

12 which we believe that the Debtor was allowed to pursue and

13 would form the basis of some sort of, I guess, a plan trust

14 or liquidating litigation trust that the Debtor would use to

15 pay back its creditors.

16        So, in that regard we removed one action from the

17 State Court which was the action against the landlord with

18 regard to the tortious interference with its contract to put

19 in a sub-lessee at the location.  Otherwise, the Debtor is

20 not obligated --

21        THE COURT:  This is your client who told me

22 through you that he wanted his State Court rights.  So,

23 having said that, he now takes an action that was well on its

24 way in the State Court and removes it here.  It's a little

25 inconsistent.



1          MR. SASLOFF:  Respectfully, Your Honor, I

2   disagree.  There are different kinds of State Court rights.

3   The State Court rights that we were here talking about last

4   time were with regard to the lease itself, the underlying

5   lease between the Debtor and landlord.  This action is a

6   damage claim essentially.  It's a claim against the landlord

7   for getting in the way of that contract which would have

8   provided this Debtor with income --

9          THE COURT:  Right, a claim that's fully based on

10  State Court -- on State law that has nothing to do with

11  bankruptcy.

12          MR. SASLOFF:  Well, it had nothing to do with the

13  bankruptcy in its main cause of action, but it is the

14  centerpiece for, at this point, the only part of the

15  reorganization case at all and the case isn't far along.  All

16  that has happened in that case so far --

17          THE COURT:  All that has happened in this case is

18  that your client is not paying rent.  Your client's still not

19  paying rent.

20          MR. SASLOFF:  Your Honor, yes, and that was as a

21  consequence of not paying rent which is why this Court

22  granted relief from the automatic stay.

23          THE COURT:  And that's it.  Your client gets to

24  stay in the property and not pay rent indefinitely?  Is that

25  your client's position?



1          MR. SASLOFF:  No, Your Honor, the relief from stay

2   would allow the landlord to seek possession of the property

3   which is what they're doing.

4          THE COURT:  So, that's the meaning of 365(d)(3) is

5   it says that you have to pay rent, but if you don't, you get

6   to rent the courthouse here and you get to stay here as long

7   as you want without there being any consequences.

8          MR. SASLOFF:  No, that's not what we believe the

9   statute says.  What the statute says is if we don't pay rent,

10  there are consequences.  The consequences for not paying rent

11  before this Court was this Court granting relief from the

12  automatic stay.

13         THE COURT:  That's it though.  That's it.

14         MR. SASLOFF:  That's all they were asking for.

15  They asked for relief under 362, not under 365.  So, as a

16  consequence of the relief they sought, they got what they

17  asked for.  You know, if they had made a motion under some

18  other form of relief, then this Court would have done maybe

19  something pursuant to that motion.  But the motion they made

20  was for relief from the automatic stay and they said to the

21  Court that additional grounds for relief, other than the fact

22  that they believe the lease had been terminated pre-Petition

23  was "we're not paying rent."

24         And we acknowledge that to this Court which is why

25  we consented to and why this Court ordered the Debtor -- that



1  the stay would be modified so that the landlord could go back

2  to State Court and do whatever it's necessary to do to take

3  possession of this property and we're not interfering in that

4  process in any manner.

5          THE COURT:  All right, but there was an

6  interesting statement in the papers that you filed.  I asked

7  for further briefing on the question of my authority to order

8  the surrender of the premises and this is the submission that

9  your firm made on November 19th, paragraph 9.  You say,

10 "There was only one instance in Section 365 of the Bankruptcy

11 Code where the trustee shall immediate surrender -- your typo

12 -- its leased premises in addition to having the lease be

13 deemed rejected."

14         And when I asked Mr. Leinwand what the effect of a

15 failure to comply with 365(d)(3) was he said it's a deemed

16 rejection.  That was what his answer was.

17         MR. SASLOFF:  The 120 days hasn't expired yet,

18 Your Honor.  So, you don't have a deemed rejection until the

19 expiration --

20         THE COURT:  No, it says that -- this sentence

21 says: "There is only one instance in Section 365 where the

22 trustee gets immediate surrender in addition to having the

23 lease be deemed rejected."  And that other instance is

24 (d)(4).

25         MR. SASLOFF:  Which is the expiration of 120 days.



1          THE COURT:  I understand.  Read what the words

2  say, "...in addition to having the lease be deemed rejected."

3  He told me that the lease is deemed -- that the consequence

4  of not paying rent under (d)(3) is a deemed rejection.

5          MR. SASLOFF:  I do not believe he said as a

6  consequence of not paying rent it's a deemed rejection.

7          THE COURT:  I asked him what the consequence of

8  failure to pay rent was and he said the rent -- the lease is

9  deemed rejected.

10         MR. SASLOFF:  Your Honor --

11         THE COURT:  We can get the transcript.

12         MR. SASLOFF:  I don't believe that's what Mr.

13  Leinwand said, but I certainly believe that that's not what

14  the statute says, nor do the cases actually say that.  So, if

15  Mr. Leinwand may have made that statement, that's not what

16  the cases hold or the statute says.

17         The meaning of the statute says that at the

18  expiration of -- there's two contrary --

19         THE COURT:  I know what (d)(3) says and (d)(4)

20  says.  So, what are you going to do under -- are you going to

21  make a motion?

22         MR. SASLOFF:  To extend, Your Honor?  I don't

23  believe we were going to, Your Honor.

24         THE COURT:  Because your position is that?

25         MR. SASLOFF:  Well, considering the stay is lifted



One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1 and the landlord is going for a warrant of eviction, I'm not

2 in the business necessarily of running up unnecessary fees

3 for a client where I'm going to be making a motion that I do

4 not believe this Court would even grant and consider.

5 And what the statute then provides if the lease is

6 deemed rejected, then the Debtor would be directed to

7 surrender the premises. If the Debtor doesn't, then the

8 landlord -- and I represent a lot of landlords, Your Honor, a

9 landlord has two choices. It comes back to this Court and

10 says give me relief from stay so I can go get my State Court

11 enforcement procedures. I'll use the normal procedures to

12 get a warrant. Or, if this Court is so inclined, could issue

13 an order and have the U.S. Marshals evict the Debtor.

14 I don't know if this Court -- in this climate, I

15 haven't seen any of the Bankruptcy Judges as of late issue

16 any orders directing the U.S. Marshal, but the consequence of

17 --

18 THE COURT: I issued one two days ago. I just

19 have a very strong feeling that your client has no respect

20 for this Court and has no respect for the process, and the

21 fact that they sought to remove what I'll call a mature State

22 action to this Court. I understand you're telling me that

23 there's a nexus to the reorganization, but that fact is

24 consistent with a pattern of behavior that indicates that

25 they're going to attempt to drag this out, not pay rent as



1  long as they can and --

2          MR. SASLOFF:  Your Honor, I respectfully again

3  disagree.  I think that you have an inaccurate view of this

4  Debtor.  We explained to the Debtor the consequences --

5          THE COURT:  I have a very accurate view in my mind

6  of your client sitting in that chair with a smirk on his

7  face.  That's my view.

8          MR. SASLOFF:  I can't control his smirk.  I know

9  what he says to us.  I know what we say to him.  We advised

10  him of what his obligations to this Court were.  We advised

11  him of what his responsibilities as a Debtor-in-possession is

12  because a financial decision whether or not to make

13  conditional capital contribution of $100,000 to keep a lease

14  when this Court was inclined to, we believe, grant relief

15  from the automatic stay and it was a business decision that

16  he chose not to fund the rent and he understood the

17  consequence was is what was going to allow the landlord to do

18  what was appropriate to get back possession.  I mean, we're

19  not standing in the way of that.

20          THE COURT:  So, if the warrant issues, is the case

21  then over?

22          MR. SASLOFF:  That part of the case is potentially

23  over, Your Honor.

24          THE COURT:  And then what's left of the case?

25          MR. SASLOFF:  We still believe that there are



1  three valid appeals; one of which may resurrect the lease if

2  the Debtor was successful in prosecuting it.  I don't -- my

3  office wouldn't be the party representing --

4          THE COURT:  Right, but if the landlord evicts your

5  client, then --

6          MR. SASLOFF:  I would have to allow the appellate

7  counsel to deal with whether that --

8          THE COURT:  I see.

9          MR. SASLOFF:  -- the appeals, but that would be an

10 issue they would have to deal with.

11         THE COURT:  Okay, all right.

12         MR. SASLOFF:  It's not something I would deal

13 with.  But there are other aspects of this case including

14 these claims against third parties that we do not necessarily

15 believe are contingent on the lease being in effect one way

16 or the other.  So that --

17         THE COURT:  What other assets are there?

18         MR. SASLOFF:  There are -- there is --

19         THE COURT:  Just the claims.

20         MR. SASLOFF:  There's this claim against the

21 landlord.  There's also another complaint that the Debtor is

22 pursuing outside the bankruptcy with regard to a malpractice

23 claim.

24         THE COURT:  But my question is what's the -- if

25 the lease goes, what's the reorganization?  There's nothing



1  to reorganize around.  You came here and said that you wanted

2  to reorganize around the lease.

3          MR. SASLOFF:  A liquidating plan is a

4  reorganization, Your Honor.  If we were to do a liquidating

5  trust with a litigation trust in it and we were to collect

6  what we believe would be damages in excess of $20 million,

7  that's more than enough to pay all the creditors a hundred

8  cent dollars.

9          THE COURT:  What creditors are there besides the

10 landlord?

11         MR. SASLOFF:  There are all the parties that --

12         THE COURT:  All right, those were just -- but I

13 remember there was an issue about that.  Some of them were

14 affiliates --

15         MR. SASLOFF:  There are six creditors that are

16 affiliates or insiders, but then there are another, I think,

17 14 creditors.

18         THE COURT:  Weren't those just law firms, not just

19 law firms.

20         MR. SASLOFF:  There's law firms, there's

21 engineers, there are people that did the construction work.

22         THE COURT:  Okay.

23         MR. SASLOFF:  There are other people -- there are

24 other people that lent money to the Debtor because when the

25 Debtor didn't have money to pay whatever rent it did pay



1 initially and to come up with the deposit because it had

2 given a security deposit to landlord in excess of a million

3 dollars or around a million dollars, those parties are all

4 listed as creditors in this case.

5          THE COURT:  Okay, all right, so what's your

6 proposal for what happens in the next 45 days of this case?

7          MR. SASLOFF:  If Your Honor was to keep this

8 litigation, we would agree to expedite whatever was necessary

9 to bring this case to the next stage.  If Your Honor remands

10 the case, I don't know if it's necessary to keep the

11 reorganization.  You know, we could keep it pending seeing

12 what the outcome of those litigations are and I don't know if

13 I'd necessarily recommend to the Debtor that he keep it

14 because he would incur additional court fees and other costs

15 if there is nothing in this Court.

16          The stay wouldn't necessarily have any benefit any

17 longer for him.  The reason why we thought it was more

18 appropriate to bring that action here is because we could

19 expedite it.  This Court would probably do that action faster

20 than the Supreme Court would.

21          Absent that action, actually that case, there

22 isn't much left for this Debtor.

23          THE COURT:  Okay.  All right.  Thank you.  All

24 right, Ms. Daley or Ms. Patterson or Ms. Lawrence?

25          MS. DALEY:  Your Honor, we're here on behalf of



1  Broadway --

2        THE COURT:  Ms. Daley, do you want to come up or

3  pull the microphone over to you.

4        MS. DALEY:  I'm sorry, Judge.  Is that better?

5  First of all, we still haven't gotten any decent occupancy

6  rent even though this Court had issued an order directing its

7  payment.  When we were last here and the Court granted some

8  of our application, there was other portions of the

9  application which were held in abeyance.

10        Two of them were the issue with regard to whether

11  or not the Court had the power or authority to issue an

12  immediate order directing their removal from the building

13  and/or directing the U.S. Marshal to remove them and deliver

14  possession back to the landlord.  And then, the other part of

15  it was with regard to the bad faith filing that that portion

16  of the application and the hearing were left in abeyance and

17  it was adjourned without a date.

18        Counsel just mentioned their claims against third

19  parties.  He mentioned a list of creditors, et cetera,

20  however, part of the bad faith application also involves his

21  submitting to this Court a list of so-called creditors that

22  didn't have claims, and pretty much he made up creditors and

23  a lot of the entities that he listed were entities in which

24  the principal of the Debtor is also involved in.

25        So, we had submitted, I believe it was a letter



1  memo that was submitted --

2          THE COURT:  Yes.

3          MS. DALEY:  -- and we never got a date back on --

4  if we were going to have a hearing on the bad faith and also

5  on that issue of this Court directing the removal.  Now, when

6  the Court signed the last order vacating the stay to the

7  extent of permitting us to go back to the State Civil Court

8  of the City of New York and County of New York, we did that.

9          The Clerk of the Court has informed us since that

10 day and we've been bothering them pretty much every week,

11 that they are backed up and we're not going to wind up with a

12 warrant for a while, and without the warrant, we can't do

13 anything.  So, they still have possession of the building.

14         In the meantime --

15         THE COURT:  Did they give you a time frame?

16         MS. DALEY:  They say that they're backed up three

17 weeks, but the truth is now with the holiday season --

18         THE COURT:  Right.

19         MS. DALEY:  -- in front of us, even if the warrant

20 were to be miraculously issued today or tomorrow, the

21 Marshals in the City of New York go on moratorium the last

22 two weeks of the year --

23         THE COURT:  Right.

24         MS. DALEY:  -- so there won't be any eviction.  We

25 don't anticipate a warrant being issued probably until the



1  beginning of next year at some point.

2          THE COURT:  Okay.

3          MS. DALEY:  And in the meantime, they continue to

4  be in possession.

5          THE COURT:  But you have the keys and you have

6  access?

7          MS. DALEY:  We have keys and we have access, but

8  we can't do anything other than --

9          THE COURT:  I gave you permission to --

10          MS. DALEY:  Do repairs and stuff, correct, but we

11  can't engage in any sort of negotiations to try to lease the

12  premises because we don't --

13          THE COURT:  But apropos of this being the holiday

14  season, I think to be blunt, I mean, not much is going to

15  happen in the next two weeks.

16          MS. DALEY:  It's understandable.  I think though

17  earlier in the Court's exchange with counsel for Debtor,

18  there was a mention of the assumption or reduction in the

19  lease.

20          THE COURT:  Yes.

21          MS. DALEY:  But that assumption or reduction of

22  the lease would presume --

23          THE COURT:  There is a lease.

24          MS. DALEY:  -- there was a lease in effect.

25          THE COURT:  I understand.



1       MS. DALEY:  And our position from day one has been

2  that that lease --

3       THE COURT:  Yes.

4       MS. DALEY:  -- is terminated in accordance with

5  the terms of the lease.  Nothing's been done to revive it so

6  this Court can't revive it, so --

7       THE COURT:  Right, but where I was going with that

8  was there's kind of this interesting little spot that we're

9  in where because of the position that the Debtor's taken that

10  the lease -- that they still have an interest in the lease

11  and that it wasn't properly terminated, nonetheless, I think

12  I'm hearing there's not going to be any motion under (d)(4).

13       So they are -- it's been positioned so that the

14  action that the Debtor claims would be required for me to

15  order a surrender, they're not going to do.  So, their

16  position is that I'm stuck.

17       MS. DALEY:  Except for the fact as part of our

18  original motion papers that issue was addressed as to whether

19  or not this was, in effect, property of the estate --

20       THE COURT:  Right.

21       MS. DALEY:  -- whether or not it had terminated

22  prior to the filing of the bankruptcy.

23       THE COURT:  Right.

24       MS. DALEY:  Now, that issue that was submitted in

25  our original application to the Court has yet to be decided.



1    THE COURT:  Right, but I think we're a little bit
2  chasing our tails because I think it's the Debtor's position
3  that even if all of that's true, you've been given your
4  remedy which is relief from the stay, whether you call it not
5  property of the estate or failure to pay rent, your remedy is
6  relief from the automatic stay and you have that.  So, the
7  only question I think is whether or not we wait a reasonable
8  time for the warrant to issue, or whether I enter an
9  immediate order for the surrender of the premises.

10    I think that you submitted authority and I've done
11  some research on my own that indicates that I do have that
12  authority.  I'd rather not exercise it, to be frank, right
13  now.  I mean, if you were to come back and tell me that the
14  warrant was not going to issue for three months, that might
15  cause me to come to a different conclusion.

16    MS. DALEY:  Well, if I may interject, Your Honor?
17    THE COURT:  Sure.
18    MS. DALEY:  Once the warrant is issued --
19    THE COURT:  Yes.
20    MS. DALEY:  -- there's a process that needs to be
21  followed and that means that a notice of intention to evict
22  needs to be served upon the Debtor.  Once that happens, the
23  Debtor or tenant respondent in the State Court proceeding
24  then has no opportunity to go back to either the court that
25  entered the judgment or to the appellate court and make an



1  application in order to stay the eviction for whatever

2  reasons including their ability to perfect an appeal, which

3  was also part of this Court's order when the stay was

4  vacated, challenging the judgment.

5          We don't anticipate that the Debtor is just going

6  to lay down and do nothing.  So, we do not anticipate either

7  getting an eviction at some time at least a month away or we

8  do anticipate having other impediments thrown into our path.

9          THE COURT:  All right, tell me about the --

10         MS. DALEY:  For that reason --

11         THE COURT:  Okay, I hear you.  Tell me about the

12  status of the -- your view of the status of the litigation

13  that's the subject of the removal.

14         MS. DALEY:  What I'm going to do is I'm going to

15  turn that over to Ms. Patterson --

16         THE COURT:  Very well.

17         MS. DALEY:  -- so that she can best address that.

18         THE COURT:  All right, thank you.

19         MS. DALEY:  Thank you, Your Honor.

20         MS. PATTERSON:  Would you like me to come to the

21  podium?

22         THE COURT:  Sure.

23         MS. PATTERSON:  Your Honor, again, Maria

24  Patterson.  I'm representing Broadway Metro Associates, the

25  landlord, as well as Albert Bialek who is a defendant in the



1  action, and I was authorized to file the papers on behalf of

2  the two other defendants in the action, Howard Siegel, P.C.

3  and Mr. Siegel individually.  He is Mr. Bialek and the

4  landlord's attorney.

5          Your Honor, the status of the State Court action

6  is that it was pending before Justice Yates --

7          THE COURT:  When was it filed?

8          MS. PATTERSON:  It was filed in April of last year

9  -- of this year, rather.

10         THE COURT:  Okay.

11         MS. PATTERSON:  And I can't remember the precise

12 date in April.

13         THE COURT:  Okay.

14         MS. PATTERSON:  And Justice Yates -- it had

15 progressed to an oral argument on a motion to dismiss, or two

16 motions to dismiss that were filed by the defendants.  Judge

17 Justice Yates heard oral argument and frankly, as I read the

18 transcript -- I was not there, my colleague, Ms. Jump,

19 handled the argument -- he seemed ready to act.

20         However, the Debtor's counsel in that proceeding

21 pled for the opportunity to file a memorandum of law

22 addressing the substance of the motion to dismiss.

23         THE COURT:  Pled, and by that you mean they had

24 failed to file anything and then asked for dispensation?

25         MS. PATTERSON:  Correct.  What they had filed was


ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1 an opposition on technical grounds saying that the motions to

2 dismiss had not been properly filed because a memorandum had

3 not been submitted with them in quite the proper way.

4          THE COURT:  Okay.

5          MS. PATTERSON:  So, they had filed in opposition,

6 but it really didn't go to the substance of the motions.  So,

7 at the oral argument --

8          THE COURT:  Mr. Sasloff, this is not your firm in

9 the State Court?

10          MR. SASLOFF:  No, Your Honor.

11          THE COURT:  Okay.

12          MS. PATTERSON:  No, no, it's a different counsel.

13          THE COURT:  Okay.

14          MS. PATTERSON:  So, counsel, you know, prevailed

15 upon the court to allow him time to file a brief addressed to

16 the substance.  He was supposed to do that within a period of

17 time, ten days I believe it was.  He did not do so.  In fact,

18 Ms. Jump was ready to make a motion for a default and then

19 this bankruptcy was filed.

20          So, we think had it not been for this bankruptcy

21 having been filed and a notice having gone from the Debtor to

22 Justice Yates, that we would have gotten a default and he

23 would have been ready to issue his decision.

24          Incidentally, Your Honor, I am embarrassed to say

25 that I realized in reviewing my brief that I had neglected to



1  put in my cases on the stay.  I do have those cases if Your

2  Honor or opposing counsel's interested in the citations.

3          But, it's our position that the filing of the

4  bankruptcy Petition did not stay the proceedings in the State

5  Court, but to be candid, to be efficient we decided rather

6  than make that argument to Justice Yates, we would make the

7  argument here because we have larger issues with this

8  bankruptcy.

9          THE COURT:  Right, okay.

10          MS. PATTERSON:  It is our position that this case

11  should be remanded or the Court, in the alternative, should

12  exercise mandatory extension.

13          As to remand -- I'll address that first -- Debtor

14  doesn't really dispute our arguments in any meaningful way.

15  Instead it creates out of thin air some argument that somehow

16  there are bankruptcy issues involved in this case and they

17  make reference to claims resolutions and offset.

18          This is not a case that came up by reference to an

19  objection to claim, for example.  This is a pretty plain

20  vanilla State Court action alleging two counts: tortious

21  interference and breach of contract.  When you look at all

22  the remand factors, there is absolutely no reason to clog up

23  this Court, to force my clients to essentially refile their

24  motions to dismiss for this Court to have to hear those

25  motions when the State Court is more than ready, willing, and



ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company

1  able to resolve these issues.

2  There's a particularly good case for remand here

3  when there are lots of other State Court proceedings

4  involving this property and the State Court has an expertise

5  in real property law in New York and this Court should look

6  to considerations of comity.

7  Turning to mandatory abstention, the key issue

8  seems to be, from reading the papers as I see it, is whether

9  this case -- the State Court case is or is not core.  It is

10 not core.  The Debtor's cases to the contrary can be easily

11 distinguished.  They rely, for example, on the *U.S. Lines*

12 case.  *U.S. Lines* involved a declaratory judgment action

13 involving a comprehensive insurance scheme.  *U.S. Lines* under

14 the insurance policies had to actually pay out funds before

15 it could make claim.  It didn't want to do that as part of

16 its bankruptcy until it had a declaratory judgment as to what

17 the insurers would do.

18 Similarly, *Best Products* which the Debtor cited,

19 that involved a subordination agreement that had to be

20 adjudicated in order to complete a plan of reorganization.

21 *Petri* involved a dispute not simply of tortious interference

22 or contract under State law, but over rights created under a

23 sales order that the Bankruptcy Court had entered.

24 If you look to the *McKinley* case in the 2nd

25 Circuit, as it phrased it in actually considering the *U.S.*



1 *Lines* precedent, it said that one of key considerations is

2 whether the proceeding that sought to be -- that the court

3 should abstain from, can exist independently of the

4 bankruptcy case.

5          This State Court action absolutely exists

6 independent of the bankruptcy case.  It was filed before the

7 bankruptcy.  Now, the Debtor seems to argue that, well,

8 because it's the major asset of the estate, therefore that

9 somehow makes it core, that simply isn't true.  *Briar Patch*

10 has told us that simply because there is an asset of the

11 estate that is litigated in another court, that doesn't mean

12 that it has to be brought within the Bankruptcy Court.

13          I finally address the issue of timeliness.  The

14 Debtor claims that this Court could adjudicate the case much

15 more quickly than the State Court.  First of all, everything

16 would have to be refiled in this Court, where we had already

17 progressed in the State Court to an oral argument on motions

18 to dismiss.

19          And, the Debtor put in its papers some statistic

20 as to the State Court -- the time it takes to adjudicate a

21 breach of contract action.  I point out: one, that's an

22 average, and two, that statistic, Your Honor, was from 1998.

23 So, average statistics as to the speed of the State Court

24 commercial par in 1998 really don't address this situation

25 where we have a case that's new to this Court, doesn't belong



1 in this Court, and that had already had oral argument in the

2 State Court.

3          So, we submit that Your Honor should either remand

4 or exercise mandatory abstention.

5          THE COURT:  All right, thank you.

6          MS. PATTERSON:  Thank you.

7          THE COURT:  Mr. Sasloff, why don't I hear you in

8 response?

9          MR. SASLOFF:  Thank you, Your Honor.  I'll be

10 brief.

11          THE COURT:  Okay.

12          MR. SASLOFF:  We stand on the papers we did

13 submit.  We do not believe that the action has had much

14 progress.  All that's happened is there was a complaint filed

15 and two motions.  The Debtor had, under the State Court

16 Judge's ruling, until September 13th to file responsive

17 papers.  This case was filed on September 2nd.  That's why

18 those response papers weren't filed.

19          We do believe that the case does bear in mind the

20 *U.S. Lines* case in the sense that the resolution of this case

21 will have a direct bearing on the Debtor's reorganization

22 case one way or the other and we believe that this Court is

23 very familiar with the New York laws, contract laws, property

24 laws, and is as capable as any other court to deal with those

25 issues.



1    We do believe that, no matter the statistics or
2  not, we believe that we could more speedily come to
3  resolution in this Court with regard to the underlying claims
4  and we do believe that the removal was timely, it was
5  appropriate, and we're prepared to move forward on it.

6    At this juncture, because the lease issue is off
7  to a different side, this claim is going to be or would be
8  the centerpiece of the remaining reorganization case and we
9  ask for the Court not to remand.

10    We think that because it is the centerpiece of
11  what would remain as the Chapter 11 case, let the Court
12  obviously hear the case.  And for the matter -- all the
13  matters have to be refiled before this Court, it's simply --
14  the complaint's already been filed.  It's just two motions
15  for dismiss, whatever exhibits were attached to those
16  motions, the preliminary opposition that the Debtor's pre-
17  petition counsel had filed at the appropriate time.

18    I mean, they haven't even answered the removal
19  action as part of this case yet, so it's like, I don't think
20  the case is far along in any regard and had the Debtor
21  brought that case before this Court after the filing of the
22  bankruptcy case, I think this Court would clearly have heard
23  that case.

24    So, the happenstance of the timing of the case,
25  you know, shouldn't be material necessarily to whether or not



1  we should be able to go forward with that case.

2         THE COURT:  All right, thank you.  All right,

3  anything else?  All right, I've read all the papers and given

4  this issue a fair amount of thought and my ruling is that I'm

5  going to direct that the case is remanded under 1452(b).  I

6  have discretion to order the remand on any number of grounds.

7  I think that the status of the case in the State Court based

8  on the representations of counsel that there was a ruling

9  imminent and also based on notwithstanding counsel's argument

10  which I believe I understand the argument that this has a

11  nexus to a potential reorganization.

12         But, on the whole and balancing the arguments on

13  both sides, this is uniquely a State Court action involving

14  the rights and remedies that these parties have against each

15  other with respect to the alleged tortious interference with

16  the lease and with the Urban Outfitters relationship and that

17  I think, on balance, this would best be litigated in the

18  State Court.  So, I'm going to ask that an order be submitted

19  in that regard.

20         I'm going to continue the rest of the case until

21  after the first of the year to -- as long as, and it does

22  appear that the Debtor is continuing to comply with my order

23  allowing access and that there's no immediate detriment or

24  harm to the building, I'm inclined at this juncture to let

25  the warrant process continue a little further.



1          I have to say though that with respect to the

2    interesting issue of what my -- the extent of my jurisdiction

3    under 365(d)(3) and the issues that I've raised with respect

4    to 365(d)(4), I think we're going to have to talk about that

5    another day.

6          And I don't view -- I think that I have

7    jurisdiction and wide berth on those issues and what I mean,

8    just to put a fine point on it, is that if what Ms. Daley is

9    saying comes to pass; in other words, that a warrant is

10   issued and that there continues to be further appeals on the

11   State side and that there is no payment of rent and again, I

12   don't know why the Debtor would pay rent now because we're

13   just in this interesting loop, I may well exercise what I

14   believe would be my authority to direct the surrender of the

15   premises.

16         So, time will tell, but at this point, I'm going

17   to send the litigation back to State Court and give you folks

18   a date.  Ms. Daley, when would you like to come back in?  I

19   think January 5th, which is a date I've been giving out, is

20   probably a little too early.

21         MS. DALEY:  Your Honor, I would tend to agree.  If

22   we're coming back in and we're to do another status on this

23   to determining what the position is with regard to the

24   warrant --

25         THE COURT:  Right.



1    MS. DALEY:  -- I would suggest that we come in a

2 little bit later than that.  As far as the motion to dismiss

3 for bad faith filing, I would imagine that at that point, the

4 Court would determine --

5    THE COURT:  At a certain point, I'll --

6    MS. DALEY:  -- a hearing date.

7    THE COURT:  Right, at a certain point, I'll look

8 at that again, but if you may recall when we had a discussion

9 last time, for the moment, I had determined that I didn't

10 want to rule on that.  So, we've got a lot of moving parts

11 now.  I think the Debtor's going to have to assess what it's

12 going to do going forward in light of the remanded

13 litigation.

14    So, we'll carry the motion to dismiss and we'll

15 carry the open issue on the warrant and the surrender until

16 the next hearing date.

17    MS. DALEY:  And what about with regard to the --

18 whether or not the lease in fact terminated --

19    THE COURT:  Same.  I mean, it's all --

20    MS. DALEY:  Part and parcel.

21    THE COURT:  -- it's all part and parcel, exactly.

22 All right, so what --

23    MS. DALEY:  I would suggest then, Your Honor, if

24 we're not going to -- if it would be just to come back in and

25 not continue with the hearing on that specific date --



ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010 :
www.esquiresolutions.com

An AlexanderGallo Company

```
1              THE COURT:  Do you want to send in a status letter
2    instead of having everybody come in?
3              MR. SASLOFF:  I think we probably need to do both.
4    I mean, I would like not to have to come in to report to the
5    Court that nothing's happened, but we do have, you know, the
6    initial case conferences regularly adjourned by this Court.
7    I would suggest maybe we adjourn that out further and then
8    just set a date --
9              THE COURT:  Why don't I just give you a date and
10   if there's a reason to get on the phone beforehand or to
11   adjourn it out, we'll just do that, so let's pick a date
12   while I have you all here.  You want to come in on January
13   19th?  Does that work, Mr. Sasloff?
14             MR. SASLOFF:  Yes, Your Honor.
15             MS. DALEY:  We have the 19th or the 20th or the
16   18th.
17             MR. SASLOFF:  Actually, the 19th I do have another
18   matter in front of Judge Gropper on that day that will
19   probably also be hotly contested.
20             MS. DALEY:  What about the 18th?
21             THE COURT:  Do you want to do the --
22             MS. DALEY:  Can we do the 18th?
23             THE COURT:  The 18th?
24             MR. SASLOFF:  That's fine, Your Honor.
25             THE COURT:  All right, the 18th at 10:00.  All
```



1    right, happy holidays, folks.

2              MS. DALEY:  Thank you, Your Honor.

3              THE COURT:  You'll get an order to me on the

4    remand?

5              MS. DALEY:  Absolutely, Your Honor.

6              THE COURT:  Email is fine if that works for you.

7    All right, thank you.

8                    (Time noted:  11:08 a.m.)

9                         *  *  *  *  *

10

11                         CERTIFICATE

12       I, RANDEL RAISON, certify that the foregoing is a

13   correct transcript from the official electronic sound

14   recording of the proceedings in the above-entitled matter, to

15   the best of my ability.

16

17                              July 18, 2011

18   Randel Raison

19

20

21

22

23

24

25

ESQUIRE
DEPOSITION SOLUTIONS
an Alexander Gallo Company

One Penn Plaza Suite 4715 New York, NY 10119
212.687.8010
www.esquiresolutions.com

An AlexanderGallo Company